# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| THE MONEY SOURCE INC. and<br>LOANCARE, LLC, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| vs. | )<br>) | Civil Case No. 18-151 |
| PAYMAP INC., | )<br>) | |
| Defendant. | )<br>) | |

## COMPLAINT

Plaintiffs The Money Source Inc. ("TMS") and LoanCare, LLC ("LoanCare") bring this action against Defendant Paymap Inc. ("Paymap") alleging as follows:

### INTRODUCTION

1. In another residential mortgage case currently pending before this Court, Case No. 1:17-cv-00125-B (hereinafter "the Diehl Action"), Anastasia P. Diehl ("Diehl") sued TMS, the servicer of her loan, and LoanCare, the sub-servicer of her loan on behalf of TMS, alleging that they caused her loan to become delinquent by failing to properly apply Ms. Diehl's monthly mortgage payments.

2. Paymap collected Ms. Diehl's monthly payments for the months of August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016 and misrouted the payments to LoanCare rather than to TMS, the servicer of Ms. Diehl's loan, many months after the loan had service-transferred from LoanCare to TMS.

3. Importantly, Diehl conceded that it was Paymap who caused the delinquency in her loan through the claims she has stated against Paymap in a second separate lawsuit she filed in this same Division of this District seeking damages from Paymap for proximately causing the delinquency in her loan with The Money Source (hereinafter the "Paymap Action").

4. TMS has no contractual relationship or affiliation with Paymap; however, TMS has been damaged by the by Paymap's negligent and wanton failure to properly route Ms. Diehl's monthly payment, and in particular, the January 2016 and April 2016 payments at issue in the Diehl Action.

5. By failing to correctly route Ms. Diehl's payments, Paymap has breached its contract with LoanCare.

## PARTIES, JURISDICTION AND VENUE

6. Plaintiff TMS is a New York corporation doing business in the State of Alabama.

7. Plaintiff LoanCare is a Virginia limited liability company doing business in the State of Alabama.

8. Defendant Paymap is a Delaware corporation who operates an Equity Accelerator Program offered through mortgage companies with its principal place of business in Colorado.

9. Venue is proper in this Court because the events giving rise to Plaintiffs' cause of action occurred in this District.

## FACTUAL ALLEGATIONS

10. On or about April 15, 2014, Anastasia P. Diehl entered into a loan agreement with Home Mortgage of America, Inc. in the amount of $140,409.00. The loan was secured by a mortgage (the note and mortgage collectively referred to as the "Loan") on Ms. Diehl's home located at 9978 Peyton Drive North in Mobile, Alabama (the "Property").

11. From April 15, 2014 through May 27, 2014, TMS serviced the Loan.

12. On or about May 27, 2014, the servicing of the Loan transferred from TMS to LoanCare, on behalf of The Money Source, Inc., which means that on May 27, 2014, LoanCare began sub-servicing the Loan on behalf of TMS.

13. Ms. Diehl signed up with the Equity Accelerator Program (defined above as the "EAP") sometime between December 2015 and January 2015 while LoanCare was servicing her Loan.

14. In August 2015, the servicing of the Loan was transferred from LoanCare (as sub-servicer for TMS) back to TMS.

15. At the time of the service transfer to TMS, Ms. Diehl continued to make payments to TMS through the Equity Accelerator Program.

16. The Loan was current when the servicing transferred to TMS effective August 3, 2015.

17. The Money Source began servicing the Loan again on August 3, 2015 and still services it today.

18. The EAP is owned by Paymap, Inc. (defined above as "Paymap"), a wholly owned subsidiary of The Western Union Company, and is not affiliated with TMS in any way.

19. There is no contractual relationship between TMS and Paymap.

20. TMS has never received a monthly payment for the months of January 2016 and April 2016 on Ms. Diehl's Loan.

21. Paymap misrouted Ms. Diehl's August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016 payment(s) to LoanCare rather than sending them to Ms. Diehl's servicer, TMS.

22. On February 1, 2016, Ms. Diehl had a joint phone call with the EAP and TMS in which the parties confirmed for the EAP that the monthly payments should be send to TMS – the current servicer of the Loan.

23. Even after the February 1, 2016 call, the EAP failed to send Ms. Diehl's April 2016 monthly payment to the correct servicer – TMS. Instead, the EAP sent the April 2016 monthly payment to LoanCare.

24. PayMap's program, the EAP, is responsible for misrouting Ms. Diehl's August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016 payments.

25. Paymap and LoanCare have a contractual agreement, dated October 17, 2011, in which Paymap is contractually bound to, among other responsibilities, provide a payment processing service.

26. Paymap breached its contract with LoanCare by failing to misrouting Ms. Diehl's August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016 payments.

27. Paymap breached its contract with LoanCare by failing to indemnify LoanCare in connection with Paymap's misrouting of the August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016 payments.

28. To date, TMS has never received Diehl's January 2016 and April 2016 payments.

## COUNT ONE
## LOAN CARE'S BREACH OF CONTRACT CLAIMS AGAINST PAYMAP

29. Plaintiffs' allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

30. Paymap and LoanCare have a contractual agreement, dated October 17, 2011, in

which Paymap is contractually bound to, among other responsibilities, provide a payment processing service.

32. Paymap breached its contract with LoanCare in failing to correctly route August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016 payments in accordance with the LoanCare's instructions to Paymap and in accordance with the contract between LoanCare and Paymap.

32. As a direct result of the acts of Paymap, LoanCare has been damaged.

WHEREFORE, LoanCare requests that this Court enter judgment against Paymap for breach of contract and award LoanCare compensatory and monetary damages, plus interest, attorneys' fee and costs in this case and the Diehl Action. LoanCare further requests such other relief as the Court deems just and proper.

## COUNT TWO
## TMS'S AND LOANCARE'S NEGLIGENCE CLAIMS AGAINST PAYMAP

33. Plaintiffs' allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

34. Paymap negligently misrouted Diehl's August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016 payment(s) to LoanCare while TMS was servicing the Loan.

35. Paymap has also negligently hired, trained, and supervised its employees.

36. Both Paymap and TMS have been sued by Ms. Diehl due to Paymap's misrouting of Ms. Diehl's monthly payments.

37. Paymap and TMS have suffered damage as a proximate result of the said negligence.

38. Paymap's negligent failure to route said payments to TMS has resulted in monetary

damage to TMS and LoanCare, including, but not limited to, the attorneys' fees that they have expended in defending Ms. Diehl's suit against them.

WHEREFORE, TMS and LoanCare requests that this Court enter judgment against Paymap for breach of contract and award TMS and LoanCare compensatory and monetary damages, plus interest, attorneys' fee and costs in this case and the Diehl Action. TMS further requests such other relief as the Court deems just and proper.

## COUNT THREE
## TMS'S AND LOANCARE'S WANTONNESS CLAIMS AGAINST PAYMAP

39. Plaintiffs' allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

40. Paymap wantonly misrouted August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016 payment(s) to LoanCare while TMS was servicing the Loan.

41. Paymap has also wantonly hired, trained, and supervised its employees.

42. Both Paymap and TMS have been sued by Ms. Diehl due to Paymap's misrouting of Ms. Diehl's monthly payments.

43. Paymap and TMS have suffered damage as a proximate result of the said negligence.

44. Paymap's wanton failure to route said payments to TMS has resulted in monetary damage to TMS and LoanCare, including, but not limited to, the attorneys' fees that they have expended in defending Ms. Diehl's suit against them.

WHEREFORE, TMS and LoanCare requests that this Court enter judgment against Paymap for breach of contract and award TMS and LoanCare compensatory and monetary damages, plus interest, attorneys' fee and costs in this case and the Diehl Action. TMS further

requests such other relief as the Court deems just and proper.

## COUNT FOUR
## TMS AND LOANCARE'S CLAIMS FOR MONEY HAD AND RECEIVED, ACCOUNTING

45. Plaintiffs' allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

46. The actions of Paymap caused the Ms. Diehl's August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016 payments to be wrongfully sent to the prior servicer rather than her current servicer, TMS.

47. To date, TMS, Ms. Diehl's current servicer, has never received Ms. Diehl's January 2016 and April 2016 payments.

48. As a result of the actions of Paymap, there is money had and received that was not properly credited to Ms. Diehl's account, as it would have been if the said payments had been sent to TMS.

WHEREFORE, TMS and LoanCare requests that this Court enter judgment against Paymap for damages for monies had and received.

## COUNT FIVE
## LOANCARE'S CLAIM FOR FAILURE TO INDEMNIFY

49. Plaintiffs' allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

50. Paymap and LoanCare have a contractual agreement, dated October 17, 2011, in which Paymap is contractually bound to, among other responsibilities, provide a payment processing service.

51. Paymap breached its contract with LoanCare by failing to indemnify LoanCare in connection with Paymap's misrouting of the August 2015, September 2015, October 2015,

November 2015, December, 2015, January 2016, and April 2016 payment(s) monthly payments, and in connection with the LoanCare's defense of the Diehl Action.

52. Section 6(b) of the contract obligates Paymap to indemnify LoanCare from claims of third parties that result solely from Paymap's breach of contract: "Paymap agrees to indemnify and hold harmless Client [LoanCare] and its agents, employees, officers, directors, affiliates, subsidiaries, successors and assigns from and against all third party claims resulting solely from Paymap's breach of this Agreement."

53. Paymap has failed to indemnify LoanCare in connection with Ms. Diehl's third party claim brought against LoanCare [and TMS] in the present and ongoing litigation in the above-defined Diehl Action.

WHEREFORE, LoanCare requests that this Court specifically enforce section 6(b) of the agreement between LoanCare and Paymap, and require Paymap to indemnify LoanCare in the Diehl Action, pursuant to the terms of the LoanCare / Paymap agreement, or, in the alternative, LoanCare requests this Court to award money damages to LoanCare sufficient to cover Paymap's indemnification obligation.

**PRAYER FOR RELIEF**

WHEREFORE, TMS and LoanCare requests that this Court enter the following judgment against Paymap:

(a) Compensatory and monetary damages, plus interest to both TMS and LoanCare;

(b) Attorneys' fee and costs in this case and the Diehl Action to both TMS and LoanCare;

(c) Any and all relief, including, but not limited to, money damages allowed to LoanCare pursuant to its contract with Paymap;

(d) Specific performance requiring Paymap to indemnify LoanCare pursuant the contract between LoanCare and Paymap, or, in the alternative, money damages sufficient to cover Paymap's failure to meet its indemnity obligation; and

(e) Further, other, and different relief for both Plaintiffs as the Court deems just and proper.

*Respectfully Submitted,*

s/ Cheryl H. Oswalt
Kerry P. McInerney (ASB-7857-N75K)
Cheryl H. Oswalt (ASB-2975-E62O)
Attorneys for Plaintiffs
The Money Source Inc. and LoanCare, LLC

**OF COUNSEL:**

**SIROTE & PERMUTT, PC**
2311 Highland Avenue South
Birmingham, Alabama 35205
Tel.: 205-930-5100
Fax: 205-930-5101
kmcinerney@sirote.com
coswalt@sirote.com

**SERVE DEFENDANT BY CERTIFIED MAIL**

Paymap Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801