# Exhibit "A"

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| THE MONEY SOURCE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 1:18-cv-00151-B |
| | ) | |
| PAYMAP INC., | ) | |
| | ) | |
| Defendant. | ) | |

## FIRST AMENDED COMPLAINT

COMES NOW The Money Source Inc. ("TMS"), the Plaintiff in the above styled cause, and, for its First Amendment to the Complaint filed in this action, states as follows:

### INTRODUCTION

1. In another residential mortgage case currently pending before this Court, Case No. 1:17-cv-00125-B (hereinafter "the Diehl Action"), Anastasia P. Diehl ("Diehl") sued TMS, the servicer of her loan, and LoanCare, the sub-servicer of her loan on behalf of TMS, alleging that they caused her loan to become delinquent by failing to properly apply Diehl's monthly mortgage payments.

2. Defendant Paymap, Inc. ("Paymap") collected Diehl's monthly payments for the months of August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016 and misrouted the payments to LoanCare rather than to TMS, the servicer of Diehl's loan, for many months after the loan had service-transferred from LoanCare to TMS in August 2015.

3. Importantly, Diehl has conceded that it was Paymap who caused the delinquency in her loan through the claims she has stated against Paymap in a second separate lawsuit she filed in this same Division of this District seeking damages from Paymap for proximately causing the delinquency in her loan with The Money Source (hereinafter the "Paymap Action").

4. TMS has no ownership in or affiliation with Paymap; however, TMS has been damaged by Paymap's negligent and wanton failure to properly route Diehl's monthly payment, and in particular, the January 2016 and April 2016 payments at issue in the Diehl Action and the Paymap Action.

5. By failing to correctly route Diehl's payments, Paymap has (1) breached the contract between LoanCare and Paymap to which TMS is a third party beneficiary, (2) damaged the servicer / customer relationship between TMS and Diehl, and (3) damaged TMS financially through the legal fees and costs that continue to accrue to TMS as a result of defending the Diehl Action due to Paymap's misrouting of Diehl's payments.

## PARTIES, JURISDICTION AND VENUE

6. Plaintiff TMS is a New York corporation doing business in the State of Alabama.

7. On July 16, 2018, LoanCare filed a Motion for Voluntary Dismissal of itself from this case, which was unopposed and the Court granted on July 24, 2018.

8. Defendant Paymap is a Delaware corporation who operates an Equity Accelerator Program offered through mortgage companies with its principal place of business in Colorado.

9. Venue is proper in this Court because the events giving rise to Plaintiff's cause of action occurred in this District.

2

## FACTUAL ALLEGATIONS

10. On or about April 15, 2014, Anastasia P. Diehl entered into a loan agreement with Home Mortgage of America, Inc. in the amount of $140,409.00. The loan was secured by a mortgage (the note and mortgage collectively referred to as the "Loan") on Diehl's home located at 9978 Peyton Drive North in Mobile, Alabama (the "Property").

11. From April 15, 2014 through May 27, 2014, TMS serviced the Loan.

12. On or about May 27, 2014, the servicing of the Loan transferred from TMS to LoanCare, on behalf of The Money Source, Inc., which means that on May 27, 2014, LoanCare began sub-servicing the Loan on behalf of TMS.

13. Diehl signed up with the Equity Accelerator Program (defined above as the "EAP") sometime between December 2015 and January 2015 while LoanCare was servicing her Loan.

14. In August 2015, the servicing of the Loan was transferred from LoanCare (as sub-servicer for TMS) back to TMS.

15. At the time of the service transfer to TMS, Diehl continued to make payments to TMS through the Equity Accelerator Program.

16. The Loan was current when the servicing transferred to TMS effective August 3, 2015.

17. The Money Source began servicing the Loan again on August 3, 2015 and still services it today.

18. The EAP is owned by Paymap, Inc. (defined above as "Paymap"), a wholly owned subsidiary of The Western Union Company, and is not affiliated with TMS in any way.

19. TMS has no ownership in or affiliation with Paymap, and does not have a direct contractual relationship with Paymap; however, TMS takes the position that it is a third party

3

beneficiary to a contract between Paymap and LoanCare dated October 17, 2011, which Paymap breached by failing to correctly route Diehl's monthly payments to TMS after the loan service transferred from LoanCare to TMS in August 2015.

20. TMS has never received a monthly payment for the months of January 2016 and April 2016 on Diehl's Loan.

21. Paymap misrouted Diehl's August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016 payment(s) to LoanCare rather than sending them to Diehl's servicer, TMS.

22. On February 1, 2016, Diehl had a joint phone call with the EAP and TMS in which the parties confirmed for the EAP that the monthly payments should be send to TMS – the current servicer of the Loan.

23. Even after the February 1, 2016 call, the Paymap's program, the EAP, failed to send Diehl's April 2016 monthly payment to the correct servicer – TMS. Instead, the EAP sent the April 2016 monthly payment to LoanCare.

24. Paymap's program, the EAP, is responsible for misrouting Diehl's August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016 payments.

25. Paymap and LoanCare have a contractual agreement, dated October 17, 2011 (the "Paymap / LoanCare Agreement" or "Agreement"), in which Paymap is contractually bound to, among other responsibilities, provide a payment processing service.

26. TMS is a third party beneficiary to the Paymap / LoanCare Agreement, as future servicers of the loans in the EAP program are clearly contemplated as beneficiaries in Paragraph 11 (as well as other provisions of the Agreement), which takes great care to ensure that when loans

4

are transferred to subsequent servicers or transferees of the loans, that future payments will be sent to the new servicers or transferees:

> "Subscriber Accounts. If Client shall determine to sell or otherwise transfer the loans that are the subject of Subscriber Contracts, Client shall notify Paymap of its intention to do so at least 15 days prior the proposed transfer or sale and provide Paymap with the name of the transferee and other pertinent details necessary for Paymap to accomplish an orderly transition to the transferee. Client shall include in its "goodbye letter" to Subscribers whose loans are sold or transferred a statement that their Subscriber Contracts will not otherwise be affected by the sale or transfer. Upon sale or transfer, this Agreement shall remain in effect in accordance with Section 1-, and client shall assist Paymap in implementing a process to make payments through Client to the transferee. Transfer of the Subscriber's loan shall not affect the Subscriber Contract."

27. Paymap breached the Paymap / LoanCare Agreement by failing to properly route Diehl's August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016 payments to TMS.

28. Among the provisions breached by Paymap in the Paymap / LoanCare Agreement, Paymap breached Schedule A, Section 2 (Paymap Responsibilities) (c) Enrollment Processing and Customer Service (7), (8), (9) & (11) by misrouting the above-stated months of Diehl's payments. Schedule A(2)(c)(7),(8), (9) and (11) provide the following as Paymap's Responsibilities:

   (7) Process on-going debits from Subscriber accounts to the CHA;
   (8) Process monthly mortgage payments from CHA to Client or a transferee designated by Client;
   (9) Handle all Subscriber enrollment and service inquiries; and
   (11) Process Subscriber mortgage and debit account changes.

29. Paymap was unjustly enriched by any fees it received in connection with its misrouting of Diehl's monthly payments.

30. TMS has suffered damages in the form of damages to its customer / servicer relationship with Diehl, and the monetary damages it has suffered in the form of the legal fees and

5

costs that it has incurred and paid as a result of having to defend itself in the Diehl Action due to Paymap's wrongful misrouting of Diehl's monthly payments.

## COUNT ONE
## TMS' BREACH OF CONTRACT CLAIM BASED ON TMS' STATUS AS A THIRD PARTY BENEFICIARY TO THE PAYMAP / LOANCARE AGREEMENT

31. Plaintiff's allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

32. Paymap and LoanCare have a contractual agreement, dated October 17, 2011, in which Paymap is contractually bound to, among other responsibilities, provide a payment processing service.

33. TMS is a third party beneficiary of the Paymap / LoanCare Agreement, as Diehl's loan service transferred from LoanCare to TMS, making TMS a transferee or subsequent servicer of the loan, as contemplated by Paragraph 11 of the Paymap / LoanCare Agreement, as well as other provisions of the Agreement. Paragraph 11 provides:

> "Subscriber Accounts. If Client shall determine to sell or otherwise transfer the loans that are the subject of Subscriber Contracts, Client shall notify Paymap of its intention to do so at least 15 days prior the proposed transfer or sale and provide Paymap with the name of the transferee and other pertinent details necessary for Paymap to accomplish an orderly transition to the transferee. Client shall include in its "goodbye letter" to Subscribers whose loans are sold or transferred a statement that their Subscriber Contracts will not otherwise be affected by the sale or transfer. Upon sale or transfer, this Agreement shall remain in effect in accordance with Section 1-, and client shall assist Paymap in implementing a process to make payments through Client to the transferee. Transfer of the Subscriber's loan shall not affect the Subscriber Contract."

34. Upon information and belief, Paymap breached the Paymap / LoanCare Agreement by failing to correctly route August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016 payments in accordance with the LoanCare's instructions to Paymap and in accordance with the contract between LoanCare and

6

Paymap.

35. The Paymap / LoanCare Agreement evidences the intent of the Paymap and LoanCare to confer a benefit on a third party, such as future servicers of the loans in the EAP like TMS, to receive proper and timely receipt of monthly payments through the EAP. The intent to create third party beneficiaries is evident both by the contract itself and is shown by the necessary implication of the provisions in the Agreement, such as in Paragraph 11.

36. Upon information and belief, Paymap breached its duty and obligations under the Paymap / LoanCare Agreement by failing to correctly route August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016 payments in accordance with the LoanCare's instructions to Paymap and the contract between LoanCare and Paymap.

37. Among the provisions breached by Paymap in the Paymap / LoanCare Agreement, Paymap breached Schedule A, Section 2 (Paymap Responsibilities) (c) Enrollment Processing and Customer Service (7), (8), (9) & (11) by misrouting the above-stated months of Diehl's payments. Schedule A(2)(c)(7),(8), (9) and (11) provide the following as Paymap's Responsibilities:

> (7) Process on-going debits from Subscriber accounts to the CHA;
> (8) Process monthly mortgage payments from CHA to Client or a transferee designated by Client;
> (9) Handle all Subscriber enrollment and service inquiries; and
> (11) Process Subscriber mortgage and debit account changes.

38. As a direct result of Paymap's misrouting of Diehl's monthly payments in the months of August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016, TMS has been denied the benefit intended for it pursuant to the Paymap / LoanCare Agreement.

7

39. TMS has suffered damages in the form of harm to its customer / servicer relationship with Diehl, and the monetary damages it has suffered in the form of the legal fees and costs that it has incurred and paid as a result of having to defend itself in the Diehl Action due to Paymap's wrongful misrouting of Diehl's monthly payments.

WHEREFORE, TMS requests that this Court enter judgment against Paymap for breach of contract and award TMS compensatory, monetary, and punitive damages, plus interest, attorneys' fees and costs in this case and the Diehl Action, and any damages due to it as contemplated by the terms of the Paymap / LoanCare Agreement, and further requests such other relief as the Court deems just and proper.

## COUNT TWO
## NEGLIGENCE

40. Plaintiff's allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

41. Paymap had a duty of reasonable care that required it to forward to TMS, as Diehl's current servicer, Diehl's monthly payments from the effective date of the service transfer of Diehl's loan to TMS (August 3, 2015) to the present.

42. Upon information and belief, Paymap negligently misrouted Diehl's August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016 payment(s) to LoanCare while TMS was servicing the Loan.

43. Paymap has also negligently hired, trained, and supervised its employees.

44. TMS has been sued by Diehl due to Paymap's misrouting of Diehl's monthly payments for August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016 Paymap.

45. TMS has suffered damages as a proximate result of the said negligence.

DOCSBHM\2238440\3

46. Paymap's negligent failure to route said payments to TMS has resulted in monetary damage to TMS, including, but not limited to, damage to TMS's servicer / customer relationship with Diehl, and damages in the form of the attorneys' fees TMS has expended and continues to expend in defending Diehl's suit against it.

WHEREFORE, TMS requests that this Court enter judgment against Paymap on TMS' negligence claim and award TMS compensatory, monetary, and punitive damages, plus interest, attorneys' fees and costs in this case and the Diehl Action, and further requests such other relief as the Court deems just and proper.

## COUNT THREE
## WANTONNESS

47. Plaintiff's allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

48. Upon information and belief, Paymap knew that TMS was Diehl's new servicer as of August 2015, and yet Paymap knowingly, consciously, intentionally, willfully, and wantonly misrouted August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016 payment(s) to LoanCare with awareness and knowledge of, and reckless indifference to the consequences of the misrouting.

49. Upon information and belief, Paymap also knowingly hired, trained, and supervised its employees in a manner that led to the misrouting of Diehl's above-described monthly payments.

50. TMS has been sued by Diehl due to Paymap's misrouting of Diehl's monthly payments for August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016 Paymap.

51. TMS has suffered damages as a proximate result of Paymap's above-described wantonness behavior.

52. Paymap's wanton failure to route said payments to TMS has resulted in monetary damage to TMS, including, but not limited to, damage to TMS's servicer / customer relationship with Diehl, and damages in the form of the attorneys' fees TMS has expended and continues to expend in defending Diehl's suit against it.

WHEREFORE, TMS requests that this Court enter judgment against Paymap on TMS' wantonness claim and award TMS compensatory, monetary, and punitive damages, plus interest, attorneys' fees and costs in this case and the Diehl Action, and further requests such other relief as the Court deems just and proper.

## COUNT FOUR
## MONEY HAD AND RECEIVED, ACCOUNTING

53. Plaintiff's allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

54. Paymap failed to properly route Diehl's August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016 payments in equity and good conscience to Diehl's current servicer, TMS.

55. The actions of Paymap caused the Diehl's August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016 payments to be wrongfully sent to the prior servicer rather than her current servicer, TMS.

56. TMS was the proper party to receive Diehl's August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016 payments, as TMS has served as the servicer of Diehl's loan from August 3, 2015 to the present.

57. As a result of the actions of Paymap, there is money had and received that was not properly credited to Diehl's account, as it would have been if the said payments had been sent to TMS.

10

WHEREFORE, TMS requests that this Court enter judgment against Paymap for damages for monies had and received.

## COUNT FIVE
## TMS' CLAIM FOR FAILURE TO INDEMNIFY

58. Plaintiff's allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

59. Paymap and LoanCare have a contractual agreement, dated October 17, 2011, (defined above as the Paymap / LoanCare Agreement) in which Paymap is contractually bound to, among other responsibilities, provide a payment processing service.

60. Section 6(b) of the contract obligates Paymap and creates a duty for it to indemnify LoanCare and its beneficiaries from claims of third parties that result solely from Paymap's breach of contract: "Paymap agrees to indemnify and hold harmless Client [LoanCare] and its agents, employees, officers, directors, affiliates, subsidiaries, *successors and assigns* from and against all third party claims resulting solely from Paymap's breach of this Agreement." (Emphasis added).

61. Section 6(b) expressly creates third party beneficiaries of Paymap's indemnity obligations therein.

62. TMS asserts that it is a successor servicer of Diehl's loan, and a third party beneficiary of the Paymap / LoanCare Agreement, and, therefore, Paymap is obligated to indemnify it for the third party claims in the Diehl Action, which resulted solely from Paymap's breach of the Paymap / LoanCare Agreement.

63. Paymap breached the Paymap / LoanCare Agreement by failing to indemnify TMS in connection with Paymap's misrouting of the August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016 payment(s) monthly payments, and in connection with the TMS' defense of the Diehl Action.

11

64. Paymap's failure to route said payments to TMS has resulted in monetary damage to TMS, including, but not limited to, damage to TMS's servicer / customer relationship with Diehl, and monetary damages in the form of the attorneys' fees TMS has expended and continues to expend in defending the Diehl Action.

WHEREFORE, TMS requests that this Court specifically enforce section 6(b) of the Paymap / LoanCare Agreement, and to require Paymap to indemnify TMS, as a third party beneficiary to the Agreement, for its legal fees and costs in the Diehl Action, pursuant to the terms of the LoanCare / Paymap Agreement, or, in the alternative, TMS requests this Court to award money damages to TMS sufficient to cover Paymap's indemnification obligation.

## COUNT SIX
## UNJUST ENRICHMENT

65. Plaintiff's allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

66. Upon information and belief, Paymap received a monetary benefit for handling Diehl's loan through the EAP.

67. Paymap's benefit was received at the expense and detriment of TMS, as Paymap failed to properly route Diehl's monthly mortgage payments to TMS, and TMS has, as a result, suffered in its servicer / customer relationship with Diehl and in the form of monetary damages as it has incurred significant legal fees in its defense of the Diehl Action.

68. Paymap's misrouting of Diehl's August 2015, September 2015, October 2015, November 2015, December, 2015, January 2016, and April 2016 payments unjustly enriches Paymap by way of receiving any fees or monetary compensation for the processing of Diehl's said monthly payments, unjustly enriching Paymap at the expense of TMS.

WHEREFORE, TMS requests that this Court specifically requests this Court in equity and

12

good conscience to award damages in equity to TMS to compensate for Paymap's unjust enrichment through the mishandling of Diehl's payments.

### **PRAYER FOR RELIEF**

WHEREFORE, TMS requests that this Court enter the following judgment against Paymap:

(a) Compensatory and monetary damages, plus interest to TMS;

(b) Attorneys' fee and costs in this case and the Diehl Action to both TMS;

(c) Punitive damages;

(d) Any and all relief, including, but not limited to, money damages allowed to TMS, as a third party beneficiary of the Paymap / LoanCare Agreement;

(e) Specific performance requiring Paymap to indemnify TMS, as a third party beneficiary of the Paymap / LoanCare Agreement, or, in the alternative, money damages sufficient to cover Paymap's failure to meet its indemnity obligation; and

(f) Equitable relief, in the form of monetary damages and/or any other relief that the Court deems just and proper on TMS' equitable claim for unjust enrichment; and

(g) Further, other, and different relief for both Plaintiffs as the Court deems just and proper.

*Respectfully submitted,*

Cheryl H. Oswalt (ASB-2975-E62O)
Juan Ortega (ASB-0056-E58J)
Attorneys for Plaintiff
The Money Source Inc.

**OF COUNSEL:**

**SIROTE & PERMUTT, PC**
2311 Highland Avenue South
Birmingham, AL 35255
Tel.: 205-930-5100

13

Fax: 205-930-5101
coswalt@sirote.com

**SIROTE & PERMUTT, P.C.**
1 Saint Louis Centre, Suite 1000
Mobile, AL 36602
Tel.: (251) 432-1671
Fax: (251) 434-0196
jortega@sirote.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the _____ that a true and correct copy of the foregoing was electronically filed with the Clerk of this Court using the CM/ECF system which will send notification of such filing to the following counsel of record.

E.B. Harrison Willis, Esq.
Cloud, Willis & Ellis, LLC
61 St. Joseph Street, Suite 1301
Mobile, AL 36602
hwillis@cloudwillis.com

_____
Of Counsel