**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **THE MONEY SOURCE INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )  **CIVIL ACTION 18-0151-WS-B** |
| | ) |
| **PAYMAP, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

**ORDER**

This matter comes before the Court on defendant's Motion to Dismiss First Amended Complaint (doc. 30). The Motion has been briefed and is now ripe.

**I.     Relevant Background.**

This litigation is a spin-off case from another action filed in this District Court, styled *Anastasia P. Diehl v. The Money Source Inc., et al.*, Civil Action 17-0125-TM-B (the "*Diehl* Action"). In the *Diehl* Action, the plaintiff, Anastasia Diehl, asserted various claims against her loan servicer, The Money Source Inc. ("TMS"), relating to the misapplication of certain payments she made on her residential mortgage. In particular, Diehl alleges that TMS violated the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.*, by failing to conduct a reasonable investigation when Diehl brought these errors to its attention; that TMS breached the mortgage agreement by misapplying a payment in August 2016; that TMS wrongfully invaded her privacy by threatening loss of her home, making harassing collection calls, and contacting her ex-husband about the alleged default; and that TMS violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*, by failing to conduct a reasonable investigation of Diehl's dispute of its reporting of false and derogatory credit information. The *Diehl* Action remains pending at this time, with pretrial and trial deadlines having been continued to facilitate ongoing mediation efforts.

In this related action, TMS brings various claims against Paymap, Inc., based on Paymap's role in allegedly collecting and misrouting Diehl's payments. The well-pleaded

factual allegations of the First Amended Complaint include the following:[1] (i) Paymap collected Diehl's monthly mortgage payments for August 2015 – January 2016 and April 2016, and misrouted them to an entity called LoanCare, rather than to TMS, which had taken over the servicing of Diehl's loan from LoanCare beginning in August 2015; (ii) through such misrouting, Paymap caused the delinquency of Diehl's loan; (iii) the misrouting of Diehl's payments breached Paymap's October 2011 agreement with LoanCare, which agreement set forth Paymap's responsibilities to ensure that payments were routed to the proper loan servicer / transferee; and (iv) Paymap's actions have harmed TMS by damaging its customer / servicer relationship with Diehl, and causing TMS to accrue legal fees and costs to defend itself in the *Diehl* Action. (Doc. 27, ¶¶ 2-5, 25-27, 30.)

On the strength of these allegations, among others, TMS asserts causes of action against Paymap for breach of contract / third-party beneficiary (Count One), negligence (Count Two), wantonness (Count Three), money had and received (Count Four), failure to indemnify (Count Five) and unjust enrichment (Count Six). Paymap now moves for dismissal of all claims and causes of action asserted by TMS pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim on which relief can be granted.

## II. Analysis.

### A. Governing Legal Standard.

To withstand Rule 12(b)(6) scrutiny and satisfy the minimum pleading requirements prescribed by Rule 8(a), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[] [its] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

---

[1] For purposes of evaluating the Motion to Dismiss, the Court accepts as true all well-pleaded factual allegations of the First Amended Complaint, and draws all reasonable inferences in favor of TMS. *See Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017) ("We must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff"); *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (on Rule 12(b)(6) review, courts "accept[] the facts alleged in the complaint as true" and "draw[] all reasonable inferences in the plaintiff's favor"). That said, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011); *see also Almanza*, 851 F.3d at 1071 ("On a Rule 12(b)(6) motion to dismiss, the Court does not accept as true unwarranted deductions of fact.").

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). Thus, minimum pleading standards "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. As the Eleventh Circuit has explained, *Twombly / Iqbal* principles demand that a complaint's allegations be "enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted). "To survive a 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, … but must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (citations and internal quotation marks omitted). The allegations must "state a claim for relief that is plausible – and not merely possible – on its face." *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017).

**B.      Whether TMS's Claims are Unripe for Lack of Damages.**

As an initial matter, Paymap moves for dismissal of the Amended Complaint in its entirety on the ground that "TMS has sustained no damages upon which it can rely to pursue these causes of action." (Doc. 30, at 6.) Paymap's position is that the damages claimed by TMS are speculative and uncertain because they are predicated on the mere possibility that TMS will ultimately be found liable for money damages in the *Diehl* Action.[2]

The threshold problem with Paymap's contention is that it is rooted in the inaccurate premise that all of TMS's claims require proof of actual damages. They do not. After all, Counts One (breach of contract) and Five (failure to provide contractual indemnification) of the Amended Complaint are contract-based claims. Applicable law provides that a plaintiff who proves a breach of contract may recover nominal damages at trial, even in the absence of actual damage to the plaintiff or proof of actual damage by the plaintiff. *See, e.g., City of Westminster*

---

[2]      As Paymap frames the argument in its brief, "To make Paymap and the Court go through the exercise of litigation on the prospect that … TMS might not prevail in defense in the [*Diehl* Action] is without precedence in the law and constitutes both a waste of time and money." (Doc. 30, at 6.)

*v. Centric-Jones Constructors*, 100 P.3d 472, 481 (Colo.App. 2003) ("Nominal damages are recoverable for a breach of contract even if no actual damages resulted or if the amount of actual damages has not been proved.").[3] Thus, even if Paymap's characterization of the Amended Complaint as failing to plead any actual damages incurred to date were accurate, dismissal of Counts One and Five would be inappropriate on that basis because TMS may recover nominal damages at trial on those contract-based claims even if it suffered no actual damages.

As for the tort claims set forth at Counts Two (negligence) and Three (wantonness), movant's premise that a plaintiff must show actual injury appears valid. *See, e.g., Adams-Arapahoe School Dist. No. 28-J v. GAF Corp.*, 959 F.2d 868, 872 (10th Cir. 1992) ("[A]ctual physical injury is an essential element of any negligence claim. … This basic tort principle makes clear that damages may not be awarded for injuries not yet suffered."); *Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.*, 739 P.2d 239, 242 (Colo. 1987) ("A cause of action founded on negligence requires proof of … actual loss or damage resulting to the interests of the plaintiff.").[4]

---

[3]     The Equity Accelerator Service Agreement between Paymap and LoanCare, as to which TMS claims third-party beneficiary status, specifies that it "shall be governed by and construed in accordance with the laws of the State of Colorado, without regard to the conflicts of laws principles thereof." (Doc. 30, Exh. A, at 3 ¶ 13.) As such, the parties appear to agree that TMS's claims against Paymap are governed by Colorado law. Even if Alabama law applied, however, the result would be the same. *See, e.g., Gilley v. Southern Research Institute*, 176 So.3d 1214, 1221 (Ala. 2015) ("the failure to submit any evidence of damages is, alone, an insufficient basis for entering a summary judgment on a breach-of-contract claim"); *Brooks v. Franklin Primary Health Center, Inc.*, 53 So.3d 932, 936 (Ala.Civ.App. 2010) ("Brooks's failure to submit evidence of damages is, alone, an insufficient basis for the summary judgment. … Alabama law provides for nominal damages if a breach of contract is proven, even if a breach-of-contract plaintiff cannot prove actual damages.") (citations omitted); *Roberson v. C.P. Allen Const. Co.*, 50 So.3d 471, 477 (Ala.Civ.App. 2010) ("Under Alabama law, an award of nominal damages is proper when a defendant breached a contract but the plaintiff … suffered no actual damage ….").

[4]     The same is true under Alabama law. *See, e.g., Laurel v. Prince*, 154 So.3d 95, 99 (Ala. 2014) ("It is a basic principle of tort law that in negligence cases, the plaintiff must suffer actual injury; mere threat of future harm, not yet realized, is not enough.") (citations omitted); *Southern Bakeries, Inc. v. Knipp*, 852 So.2d 712, 716 (Ala. 2002) ("Alabama has long required a manifest, present injury before a plaintiff may recover in tort.") (citations and footnote omitted); *Abrams v. Ciba Specialty Chemicals Corp.*, 663 F. Supp.2d 1259, 1265 (S.D. Ala. 2009) ("It is fundamental that a plaintiff seeking to recover for tortious conduct under Alabama law must show an injury.") (citations omitted).

TMS's principal response to this argument is that Paymap "ignores the very real and actual damages already suffered by TMS and averred to in TMS's First Amended Complaint." (Doc. 36, at 4.)[5] Those damages enumerated in TMS's pleading consist of "damages to its customer / servicer relationship with Diehl, and the monetary damages it has suffered in the form of the legal fees and costs that it has incurred and paid as a result of having to defendant itself in the Diehl Action due to Paymap's wrongful misrouting of Diehl's monthly payments." (Doc. 27, ¶ 30; *see also id.*, ¶¶ 39, 46, 52, 64, 67.)

Clearly, then, TMS's Amended Complaint alleges reputational injury in the form of "damages to its customer / servicer relationship with Diehl" caused by the wrongful conduct attributed to Paymap. In response, movant identifies no persuasive basis for concluding that such harm does not constitute an actual injury that might support an award of damages against Paymap on TMS's tort claims. Indeed, Paymap's only rejoinder to TMS's reliance on this category of damages is as follows: "other than simply saying that Plaintiff has suffered 'reputation' damages, there is no proof in any form that this is damage that has occurred as opposed to pure speculation." (Doc. 37, at 3.) Of course, this action is at the Rule 12(b)(6) stage, not the summary judgment stage. The rules of civil procedure do not obligate a plaintiff to "prove" anything in its complaint; therefore, Paymap's "no-proof" argument is misguided. At this point in the proceedings, a plaintiff merely must plead sufficient facts to state a plausible claim for relief. TMS has plausibly pleaded reputational harm arising from the errors that it

---

[5]       TMS also attempts to rebut Paymap's argument by citing Colorado and Alabama authorities for the proposition that "damages must be factual, but not certain or adjudicated as to amount." (Doc. 36, at 3.) That legal premise is correct, *see, e.g., Systrends, Inc. v. Group 8760, LLC*, 959 So.2d 1052, 1076 (Ala. 2006) ("If the damage or loss or harm suffered is certain, the fact that the extent is uncertain does not prevent a recovery.") (citations omitted), but it is also unavailing for plaintiff here. After all, defendant's position is not that the Amended Complaint should be dismissed because the <u>amount</u> of damages is uncertain and unadjudicated at this time; rather, Paymap's contention is that the <u>fact</u> of damages is uncertain because TMS is attempting to recover in this action for liability that may or may not ever be imposed on it in the *Diehl* Action at some future time. The fact of any TMS liability in the *Diehl* Action (and, hence, the existence of that category of damages) is very much uncertain today. That is to say, it is speculative whether TMS will suffer damage or loss or harm in the form of liability in the *Diehl* Action at all. Under the circumstances, plaintiff's reliance on these cases (*i.e.*, authorities allowing recovery where the <u>amount</u> of damages is uncertain but the <u>fact</u> of damage or loss is not) is misplaced. Paymap's Rule 12(b)(6) Motion challenges not the amount of TMS's damages but the existence of any such damage or loss in the first place.

attributes to Paymap in the processing of Diehl's mortgage payments; indeed, it is entirely plausible that a loan servicer's relationship with its customer would be damaged by a third party's mishandling of mortgage payments by that customer, resulting in such payments never being credited to the customer's loan. Nothing more is required for TMS to plead "reputational injury" as a basis for recovery in tort in this action, and the Court rejects Paymap's contention that dismissal is necessary because plaintiff's reliance on this type of harm is "pure speculation" with "no proof." TMS has pleaded actual damages that it has already suffered by virtue of Paymap's conduct, without regard to whether TMS is ultimately found liable to Diehl in the *Diehl* Action or not. For all of these reasons, dismissal of the Amended Complaint is not warranted for insufficient pleading of actual injury or damages.[6]

### C. Claim-Specific Grounds for Dismissal.

In addition to moving for dismissal of the First Amended Complaint in its entirety on a "no-damages" theory, Paymap advances several arguments directed at particular claims.

---

[6] Having concluded that the Amended Complaint has adequately pleaded an actual injury in the form of reputation damages, the Court need not address Paymap's argument that TMS's claims to recover the attorney's fees and costs it has incurred in defending the *Diehl* Action are not legally cognizable. Certainly, defendant is correct that the general rule under both Colorado law and Alabama law is that parties are responsible for their own attorney's fees unless otherwise authorized by statute, provided in a contract, or recognized by special equity. *See generally Guardian Builders, LLC v. Uselton*, 154 So.3d 964, 970 (Ala. 2014) ("The American rule generally provides that a prevailing party in litigation is not entitled to an award of attorney fees unless those fees are provided for by statute or by contract or if they are otherwise justified for certain equitable reasons."); *C.K. v. People*, 407 P.3d 566, 570 (Colo. 2017) ("the rule … in Colorado is that absent a specific, contractual, statutory, or procedural rule providing otherwise, attorney fees are generally not recoverable") (citations and internal quotation marks omitted). TMS has identified no exception to this general prohibition on recovery of attorney's fees that might entitle it to an award in this case of the attorney's fees that TMS incurred in defending the *Diehl* Action. The Court also notes, however, that costs (as distinguished from attorney's fees) might not be lumped into that American rule prohibition on recovery, as Paymap attempts to do in its Reply (doc. 37, at 4). *See, e.g., Guardian Builders*, 154 So.3d at 973 (observing that "court costs are distinguishable from attorney fees," and that "the American rule does not prohibit an award of court costs to the prevailing party"). Nonetheless, because the Court need not reach it to resolve the pending Rule 12(b)(6) Motion in its entirety, the issue of whether TMS's attorney's fees and costs incurred in the *Diehl* Action are proper categories of damages recoverable against Paymap in this action are left for another day, with the benefit of more rigorous, focused briefing by the parties.

### 1.      *Negligence and Wantonness (Counts Two and Three).*

Paymap contends that the negligence and wantonness claims should be dismissed for two independent reasons.  First, it argues that Counts Two and Three are untimely.  Both sides agree that TMS's negligence and wantonness claims are subject to a two-year statute of limitations, regardless of whether Colorado or Alabama law governs.[7]  Recall that these claims arise from allegations that Paymap misrouted Diehl's monthly mortgage payments for August 2015 through January 2016, as well as for April 2016.  In the Motion to Dismiss, Paymap argues that Counts Two and Three accrued with the misrouting of the August 2015 payment, yet TMS did not file its Complaint until March 30, 2018, well after the applicable two-year limitations period had expired.

Defendant's limitations argument cannot prevail.  After all, the Amended Complaint plainly alleges negligent / wanton conduct by defendant through April 2016, which would lie within the two-year limitations period.  Certainly, TMS is not time-barred from seeking relief on a negligence / wantonness theory for alleged tortious acts and omissions by Paymap within the two-year period preceding the filing of the Complaint, such as the alleged misrouting of Diehl's April 2016 mortgage payment.  Moreover, TMS has invoked the concept of a continuous tort or continuous wrong, as a means of bringing all of the alleged wrongful acts by Paymap within the two-year limitations period.  Neither side has submitted more than cursory briefing on this topic; however, it bears noting that both Alabama and Colorado recognize the continuing tort doctrine in some form to toll the limitations period until the date the tortious conduct ends.  *See, e.g., AC, Inc. v. Baker*, 622 So.2d 331, 335 (Ala. 1993) ("this Court … has recognized, in certain situations, a 'continuing tort' doctrine that operates to toll the running of the limitations period in tort cases until the date that the last injury occurred"); *Sanderson v. Heath Mesa Homeowners Ass'n*, 183 P.3d 679, 682 (Colo.App. 2008) ("a claim for a continuous tort … does not begin to accrue until the tortious conduct has ceased").  At this stage, on such barebones treatment of the

---

[7]      *See* Colo. Rev. Stat. § 13-80-102(1)(a) ("[t]he following civil actions … must be commenced within two years after the cause of action accrues, and not thereafter: Tort claims, including but not limited to actions for negligence, … outrageous conduct, interference with relationships, and tortious breach of contract"); Ala. Code § 6-2-38(*l*) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years.").

issue by the parties, the Court cannot discard the possibility that principles of continuous tort might render all aspects of Counts Two and Three timely. Defendant has thus not met its burden of showing that it is entitled to dismissal of plaintiff's negligence and wantonness claims on timeliness grounds.

Alternatively, Paymap contends that Counts Two and Three should be dismissed pursuant to Colorado's economic loss rule. Under Colorado law, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law," such that to survive a motion to dismiss based on the economic loss rule, a plaintiff must allege "sufficient facts, taken in the light most favorable to him, that would amount to the violation of a tort duty that is independent of the contract." *Spring Creek Exploration & Production Co. v. Hess Bakken Investment, II, LLC*, 887 F.3d 1003, 1020 (10th Cir. 2018) (citations omitted); *see also Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 607 (Colo. 2016) (explaining that "[t]he economic loss rule serves to maintain a distinction between contract and tort law" and "prevents tort law from swallowing all of contract law") (citations and internal quotation marks omitted). In its Rule 12(b)(6) Motion, Paymap posits that any duty it owed to route Diehl's mortgage payments properly arose solely from the contract between Paymap and LoanCare, such that the economic loss rule bars TMS's negligence and wantonness claims.

In response, TMS maintains that the Paymap/LoanCare agreement "does not specifically impose a duty of care on Paymap for its actions relating to the forwarding of monthly payments, or on its treatment of third party beneficiaries." (Doc. 36, at 9-10.) But even cursory review of that agreement reveals that it contains provisions setting forth in detail the nature and extent of Paymap's responsibilities as to payment processing.[8] Moreover, TMS's own pleading

---

[8] Specifically, the agreement reflects that "Paymap will provide the payment processing service and related activities as described on <u>Schedule A</u>" and that "[t]he parties shall perform and comply with their respective responsibilities set forth on <u>Schedule A</u>." (Doc. 30, Exh. A, at 2 ¶ 2.) Schedule A lists under the heading "Paymap Responsibilities" the following items, among others: (i) "Process on-going debits from Subscriber accounts to the CHA," (ii) "Process monthly mortgage payments from the CHA to Client or a transferee designated by Client," (iii) "Handle all Subscriber enrollment and service inquiries," (iv) "Process Subscriber mortgage and debit account changes," (v) "Generate annual Subscriber statement," and (vi) "Reconcile on a monthly basis the CHA and perform all functions necessary to ensure that the CHA accurately reflects all account activity." (*Id.* at 4 § 2.)

specifically alleges that "[b]y failing to correctly route Diehl's payments, Paymap has … breached the contract between LoanCare and Paymap to which TMS is a third party beneficiary." (Doc. 27, ¶ 5.) Under any reasonable reading of the Paymap / LoanCare agreement, Paymap's duties to collect, process and distribute mortgage payments from Diehl arose directly from, and indeed were part and parcel of the essential purpose of, that contract. Accordingly, TMS's negligence and wantonness claims are grounded in Paymap's contractual duties, thereby placing them squarely within the ambit of the economic loss rule and negating TMS's ability to recover on such claims. *See, e.g., Town of Alma v. AZO Construction, Inc.*, 10 P.3d 1256, 1261 (Colo. 2000) ("This economic loss rule prevents recovery for negligence when the duty breached is a contractual duty and the harm incurred is the result of failure of the purpose of the contract.") (citation omitted). By straightforward application of that rule, then, Counts Two and Three are properly dismissed for failure to state a claim because TMS's only available recovery for breach of a contractual duty resulting in economic loss lies in contract, not tort. *See id.* at 1262 ("A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie.") (citation omitted).

In response, TMS argues that Paymap had a separate, extra-contractual duty to remit Diehl's mortgage payments to the proper recipient. Supporting that contention, TMS cites authority standing generally for the proposition that whether to recognize a legal duty of care is a question of fairness under contemporary standards, and concludes that it is only reasonable and fair that Paymap owed a basic duty of reasonable care to loan servicers like TMS. (Doc. 36, at 7-8.) But one of the foundational purposes of the Paymap / LoanCare agreement (as to which TMS claims third-party beneficiary status) was to impose specific responsibilities on Paymap for processing payments. Any failure by Paymap to process Diehl's payments properly breached that contractual duty. Given the existence of contractual protections for loan servicers in TMS's position, there is no apparent reason why an independent duty outside the contract could or should be imposed to require Paymap to fulfill its payment-processing responsibilities under the contract. Extrapolating from the Paymap / LoanCare agreement to create an extracontractual duty would blur the lines between contract and tort law, effectively allowing tort law to swallow contract law, which is exactly the result that the economic loss rule was designed to prevent. Plaintiff also identifies no Colorado authorities supporting the proposition that recognizing the existence of a duty independent of contractual obligations would be appropriate or even

permissible here under Colorado law.  By the terms of the economic loss doctrine, then, Counts Two and Three cannot proceed.  TMS's sole remedy for breach of Paymap's contractual duty to process Diehl's mortgage payments properly lies in contract, not tort.[9]  Accordingly, the Motion to Dismiss is properly **granted** as to Counts Two and Three.

### 2.    *Money Had and Received (Count Four).*

Next, Paymap takes aim at Count Four of the Amended Complaint, which is a claim for money had and received.  In that claim, TMS alleges that Paymap's actions caused Diehl's payments to be sent to the wrong entity, and that "TMS was the proper party to receive" them. (Doc. 27, ¶ 56.)  Defendant posits that TMS cannot properly assert a claim for money had and received because the subject funds belong to Diehl, not TMS.

Under Colorado law, "[a] plaintiff can maintain an action for money had and received whenever the defendant has received money which, in equity and good conscience, he ought to pay over."  *Monday v. Robert J. Anderson, P.C.*, 77 P.3d 855, 857 (Colo.App. 2003) (citations

---

[9]        In so concluding, the Court addresses two other points raised by TMS.  First, plaintiff relies on cases cited by *Town of Alma* in which the Colorado Supreme Court found that "the negligence claims arose from the breach of duties which were independent of the contract." *Town of Alma*, 10 P.3d at 1265.  But TMS has not explained – and the Court does not perceive – how Paymap's duties for processing Diehl's mortgage payments could reasonably be framed as arising from any source other than the Paymap / LoanCare contract.  These facts are not like the cases cited in *Town of Alma* finding a common-law duty to exercise due care in a plumbing installation, to inspect a safety valve during repair work on a gas-operated boiler, or to act without negligence in building a home.  By contrast, the relationship here involves a loan servicer and a third-party payment processor, which is not a special relationship giving rise to an exception to the economic loss rule.  *See generally Miller v. Bank of New York Mellon*, 379 P.3d 342, 348 (Colo. App. 2016) (although a special relationship may trigger an independent duty of care supporting a tort action, "very few special relationships are recognized in Colorado tort law, and the lender-borrower relationship is not one of them").  Plaintiff simply identifies no authority and no persuasive reason to believe that Paymap's duties vis a vis Diehl's mortgage payments arose anywhere other than the Paymap / LoanCare contract, thereby placing Counts Two and Three directly within the crosshairs of the economic loss rule.  Second, TMS suggests that "reputational damage and damage to servicer / customer relationship" do not qualify as "economic loss."  (Doc. 36, at 9.)  However, plaintiff identifies no authority for this proposition, and Colorado law appears to state otherwise.  *See, e.g., U.S. Fire Ins. Co. v. Sonitrol Management Corp.*, 192 P.3d 543, 547 (Colo.App. 2008) ("Economic loss is defined generally as damage other than physical harm to persons or property.") (citations omitted).  Thus, TMS has not shown that it can avoid the effects of the economic loss doctrine merely by summarily denying that reputational damage qualifies as economic loss.

and internal quotation marks omitted); *see also Mullens v. Hansel-Henderson*, 65 P.3d 992, 999 (Colo. 2002) (under the principle of money had and received, "a party will not be allowed to keep money which in equity and good conscience should be returned to another"). Here, TMS's pleading alleges that Paymap received money which in equity and good conscience it should pay over to TMS, as the servicer of Diehl's loan and the proper party to receive such funds. Nothing more is required to state a claim for money had and received. To be sure, Paymap suggests that TMS must prove that the money belongs to it in order to assert such a claim; however, it cites no Colorado authority supporting that proposition, and the undersigned's research shows that this cause of action is available whenever the defendant received money which "in equity and good conscience" it ought to pay over. Proof that the funds somehow "belong" to the plaintiff does not appear to be an element of the claim, as long as there is an equitable basis for requiring the funds to be paid over to the plaintiff, which TMS has adequately alleged. Paymap has made no showing to the contrary.[10] Therefore, the Motion to Dismiss will be denied as to Count Four.

### 3. *Failure to Indemnify (Count Five).*

Finally, defendant moves for dismissal of Count Five, which asserts a contractual claim for failure to indemnify. In conclusory fashion, defendant states that "there is no indemnification issue because TMS has not been deemed liable for damages to Diehl in the Money Source Action." (Doc. 30, at 10.) Defendant cites no Colorado authority for this proposition; indeed, the only authority it cites is an unpublished Alabama district court case addressing judicial discretion under the Declaratory Judgment Act. But TMS's Count Five is not a claim for declaratory judgment, is not brought under the Declaratory Judgment Act, and (apparently all parties agree) is governed by Colorado law. After certain of these defects in the Motion were pointed out by plaintiff's response (*see* doc. 36, at 11), defendant failed to buttress its argument

---

[10]     In arguing otherwise, Paymap relies exclusively on *Monday*; however, in that case, the Colorado Court of Appeals utilized the same broad "equity and good conscience" standard described above, without stating that a necessary element of the claim is that the money legally belongs to the plaintiff. *See Monday*, 77 P.3d at 857 ("**For example**, a person who receives money but has no right to retain it, may be required in equity to give up the money to another who has a right to it.") (emphasis added). Accepting as true the well-pleaded factual allegations of the Amended Complaint, equitable principles strongly suggest that the money received by Paymap should be paid over to TMS as the proper servicer of Diehl's mortgage loan; therefore, TMS has stated a cognizable claim of money had and received.

in the reply.  On such a negligible showing, the Court will not grant Rule 12(b)(6) relief as to Count Five.

**III.    Conclusion.**

For all of the foregoing reasons, defendant's Motion to Dismiss the First Amended Complaint (doc. 30) is **granted in part**, and **denied in part**.  The Motion is **granted** as to Counts Two (negligence) and Three (wantonness), which are **dismissed** by operation of Colorado's economic loss rule.  In all other respects, the Motion is **denied**.  Defendant is **ordered** to file its answer to the Amended Complaint on or before **November 13, 2018**.

DONE and ORDERED this 29th day of October, 2018.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE
